**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Criminal Case No. 07-cr-00354-CMA
Civil Action No. 10-cv-01231-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHNNY SCOTT WARREN,

    Defendant.

---

## ORDER DENYING MOTION FOR RECONSIDERATION

---

This matter is before the Court on Defendant's Motion for Reconsideration (Doc. # 223) of the Court's prior order (Doc. # 214) denying Defendant's request for sentence reduction. The Motion is denied for the following reasons.

### I.    BACKGROUND

In 2007, while on parole for a robbery conviction, (Doc. # 94, pp. 4-5), Defendant was indicted on crack-cocaine and weapons charges. (Doc. # 161, ¶¶ 77-85). He was tried and convicted of (1) Felon in Possession of a Firearm and (2) Possession with Intent to Distribute more than fifty grams of crack cocaine. (Doc. # 161, p. 1). Because Defendant had multiple prior felony convictions, he was considered a "career offender" for sentencing purposes, and the sentencing guidelines called for a prison sentence of

1

thirty years to life. (Doc. # 161, ¶ 46). However, the court sentenced Defendant to just 240 months[1] – ten years less than the guideline minimum. (Doc. # 94, pp. 2, 4).

In 2010, after Defendant had been sentenced, Congress enacted the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010). The purpose of the Act was to reduce the disparate treatment of offenders who dealt crack cocaine compared to offenders who dealt powder cocaine. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). Before the Fair Sentencing Act, an offense involving fifty or more grams of crack cocaine would carry a statutory sentencing range of ten years to life in prison. 21 U.S.C. § 841(b)(1)(A)(iii) (2006). The Fair Sentencing Act amended that provision so that a higher quantity of drugs would be needed to trigger the same sentences: an offense involving 280 or more grams (rather than fifty or more grams) of crack cocaine would carry a sentence of ten years to life; an offense involving twenty-eight or more grams (rather than five or more grams) of crack cocaine was subject to a sentence of five to forty years in prison. *See* Fair Sentencing Act § 2.1. However, these changes did not apply retroactively, so Defendant's sentence was unaffected. *See Dorsey*, 567 U.S. at 280–81.

Eight years after the enactment of the Fair Sentencing Act, Congress enacted the First Step Act. The First Step Act gives district courts discretion to impose a reduced sentence "as if" the Fair Sentencing Act had been in effect at the time the defendant committed the offense. *United States v. Kelley*, 962 F.3d 470, 471–72 (9th Cir. 2020). Thus, a defendant sentenced under the old crack-cocaine sentencing regime can now

---

[1] Defendant was sentenced to 240 months for his drug offense and 120 months for his weapons offense, but his sentences were set to run concurrently. (Doc. # 94, p. 4).

petition the court to resentence him under the new sentencing scheme. That is what happened in this case.

After the enactment of the First Step Act, Defendant filed a motion for sentence reduction. (Doc. # 208). Defendant argued that, if he were sentenced today, the Fair Sentencing Act and the applicable sentencing guidelines[2] would call for sentence in the range of 262 to 327 months – far less than the guideline range at the time he was originally sentenced. (Doc. # 208, p. 6). Although the guidelines still called for a minimum sentence nearly two years longer than the sentence Defendant received, Defendant nevertheless argued that his sentence should be reduced. (Doc. # 208). Defendant reasoned that, because his original sentence was far below the old guideline minimum, this Court should reduce his sentence to be an equivalent amount below the new guideline minimum. (Doc. # 208, pp. 6-7). This Court denied the Motion. (Doc. # 214).

Defendant now asks that the court reconsider its prior order. (Doc. # 223). Defendant argues that his first motion erroneously conceded that Defendant would be a "career offender" under today's sentencing guidelines. (Doc. # 223, p. 1). He now argues that he would *not* be a career offender if he were sentenced today, and he asserts the applicable sentencing range would be 120 to 150 months. (Doc. # 223, p. 1). Because he has already served more than 120 months, he asks that the Court grant his immediate release. (Doc. # 223, p. 1).

---

[2] The guideline range is calculated using the statutory maximum sentence set forth in the Fair Sentencing Act. *See* U.S.S.G. § 4B1.1.

## II. LEGAL STANDARDS

### A. MOTION FOR RECONSIDERATION

"Although the Federal Rules of Criminal Procedure do not authorize a motion for reconsideration, motions to reconsider in criminal prosecutions are proper." *United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011) (internal quotations omitted). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

Defendant's Motion does not present any new evidence or any change in the controlling law since his last motion. Therefore, the Court will grant the Motion to Reconsider only if Defendant's Motion demonstrates a need to correct a clear error or to prevent manifest injustice. *Servants of Paraclete*, 204 F.3d at 1012.

### B. SENTENCE REDUCTION UNDER THE FIRST STEP ACT

The parties agree that Defendant is eligible for sentence reduction under the First Step Act. However, "whether that relief is warranted is a separate inquiry." *United States v. Lewis*, 398 F. Supp. 3d 945, 972 (D.N.M. 2019).

Courts are split over how to determine whether relief is "warranted" under the First Step Act. Some courts limit themselves to "making only the changes required by sections 2 and 3 of the Fair Sentencing Act." *United States v. Kelley*, 962 F. 3d 470, 475

(9th Cir. 2020). Others resist a "mechanical application of the Fair Sentencing Act," *United States v. Chambers*, 956 F. 3d 667, 672 (4th Cir. 2020), instead taking into account other sentencing considerations, including the sentencing factors in 18 U.S.C. § 3533, changes to the sentencing guidelines, and other changes in the law since defendant was sentenced. *See id.* at 672-74 ("there is no limiting language [in the First Step Act] to preclude the court from applying intervening case law"); *see also United States v. Rose*, 379 F. Supp. 3d 223, 234 (S.D.N.Y. 2019) ("Section 3553(a) is triggered whenever a district court "impose[s] a sentence.").

The Tenth Circuit recently adopted something of a hybrid approach: in *United States v. Brown*, the Tenth Circuit held that courts "can only make the Fair Sentencing Act retroactive and cannot consider new law." 974 F. 3d 1137, 1144 (10th Cir. 2020). However, the sentencing court may correct any errors in Defendant's original sentence, including any errors in classifying a defendant as a career offender. *Id.* at 1145. Additionally, although the Court may not consider "an amendment to the law" adopted after the defendant's original sentence, it may consider intervening case law that clarifies "what the law always was." *Id.* at 1145. Finally, "[n]otwithstanding the fact that neither the [First Step Act] nor § 3582(c)(1)(B) reference the 18 U.S.C. § 3553(a) factors, they are permissible, although not required, considerations when ruling on a [First Step Act] motion." *United States v. Mannie*, 971 F. 3d 1145, 1158 n. 18 (10th Cir. 2020).[3]

---

[3] Defendant filed this Motion before the *Brown* and *Mannie* decisions were issued. After *Brown* and *Mannie*, however, Defendant filed a "notice" supplementing his Motion. (Doc. # 230). That notice did not address, and did not seek leave to address, the effect of *Brown* and *Mannie* on this case. Therefore, the Court presumes that Defendant's arguments remain unchanged after *Brown* and *Mannie*, and it will not invite supplemental briefing on the issue.

Thus, in deciding whether to reduce Defendant's sentence under the First Step Act, the Court may consider (1) the amended sentencing range under the Fair Sentencing Act; (2) any intervening case law clarifying how the sentencing rules and guidelines should be applied; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a). *See Brown*, 974 F. 3d at 1144-1145; *see also Mannie*, 971 F.3d at 1158 n. 18. Relief under the First Step Act is always discretionary: nothing in the Act requires district courts to reduce a defendant's sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222 (2018) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *see also Lewis*, 398 F. Supp. 3d at 972.

### III.   ANALYSIS

Defendant argues that he should be immediately released from prison because "he would not be a Career Offender if sentenced today." (Doc. # 223, p. 3). The Court is not convinced.

As an initial matter, Defendant concedes that he was correctly sentenced as a career offender in 2008. (Doc. # 223, pp. 2-3). Then, as now, a defendant who was convicted of a drug-related offense was deemed a career offender if he had at least two prior felony convictions involving drugs or a "crime of violence." USSG § 4B1.1. At the time of his 2008 conviction, Defendant had already been convicted of three prior felonies that qualified him for career-offender status:

- (1) a 1996 conviction for Unlawful Use of Communications Facility to Facilitate a Drug Trafficking Offense;
- (2) a 2001 conviction for second-degree assault; and
- (3) a 2006 conviction for conspiracy to commit robbery.

(Doc. # 161, ¶ 46). The Presentence Investigation Report (PSI) concluded that, based on these offenses, Defendant was a career offender for purposes of the sentencing guidelines. (Doc. # 161, ¶ 46). Although Defendant objected to other aspects of his sentence calculation, he did not challenge his career-offender status. (*See* Doc. # 161, pp. 49, 51-58 *and* Doc. # 94-1, ¶¶ 3-4). Defendant identifies no errors in his original sentence, and he provides no authority to suggest that the career-offender guidelines were not applied correctly. Therefore, under the standard set forth in *Brown*, the Court can deny Defendant's Motion without further analysis. *See* 974 F. 3d at 1144-1145.

Defendant argues, however, that "under today's law," he would no longer qualify as a career offender. (Doc. # 223, p. 1). The Tenth Circuit applies the "categorical approach" to determining whether a defendant is a career offender. *See United States v. Madkins*, 866 F.3d 1136, 1144-45 (10th Cir. 2017). Under the categorical approach, courts look only "to the elements of the statutes of conviction and not to the particular facts underlying those convictions" to determine whether a defendant should be deemed a career offender. *United States v. Titties*, 852 F. 3d 1257, 1266 (10th Cir. 2017). The gist of Defendant's argument is, if he were sentenced today, recent case law would compel the conclusion that his offenses did *not* qualify him for career-offender status, and the sentencing guidelines would call for a lesser sentence than the one he received. (Doc. # 223, p. 4). Assuming, for the sake of argument, that Defendant is correct, this Court need not ignore the facts of Defendant's prior crimes when deciding this Motion.

Just as 18 U.S.C. § 3553(a) allows the Court to consider "the kinds of sentence and the sentencing range established" for Defendant's crimes, it also allows the Court to

consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Taking all these factors into consideration, the Court concludes that sentence reduction is not appropriate.

Defendant's prior offenses were serious and damaging. Though Defendant attempts to downplay his second-degree assault conviction by arguing that "this crime could be committed by spiking the punch bowl at a party," (Doc. # 223, p. 6), the Presentence Investigation Report (PSI) reveals that Defendant did far more than merely spike a punch bowl: he allegedly fired a gun at driver who pulled up next to him at a red light, injuring the victim's hand, and then chased the victim through the city. (Doc. # 161, ¶¶ 72-73). Defendant was initially charged with attempted first-degree murder, but ultimately pled to second-degree assault as part of a generous plea deal. (Doc. # 161, ¶¶ 72-73). Defendant's conspiracy conviction was also a serious offense. That charge arose from a string of armed robberies and attempted home invasions. (Doc. # 161, ¶¶ 77-81). Defendant was charged with sixty-two offenses – primarily felonies – before ultimately pleading guilty to a conspiracy charge. (Doc. # 161, ¶¶ 77-81).[4] Thus, even without the career-offender classification, Defendant's criminal history called for a lengthy sentence.

As the sentencing court correctly observed, Defendant's "criminal history category, his past conduct, his past membership in gangs all call for a very severe sentence in this case . . . to pretend that that doesn't exist and that he hasn't gotten breaks before is simply to fly in the face of reality." (Doc. # 108, p. 26). Despite all these

---

[4] Defendant's response to the PSI disputed these allegations. However, Defendant conceded that he pled guilty in both cases, (Doc. # 161, p. 53), and the Court finds no evidence in the record to suggest that these allegations were unfounded.

8

factors favoring a lengthy prison sentence, Defendant received a sentence that was ten years shorter than the minimum sentence recommended by the sentencing guidelines. The sentencing court believed that Defendant's sentence was appropriate at the time it was issued, and this Court believes that that sentence remains appropriate today.[5]

Defendant next argues that his sentence should be reduced because it is based on "the irrational disparity in the sentencing guidelines between crack and powder cocaine." (Doc. # 229, p. 8). Defendant fails to provide any support for this argument. Defendant cites no authority whatsoever to suggest that he would have received a lesser sentence if his offenses had involved powder cocaine rather than crack cocaine. Therefore, the Court declines to reduce Defendant's argument on that basis.

Finally, Defendant argues that he should be released because "the current COVID-19 pandemic has stressed the need to reduce the prison population." (Doc. # 223, p. 1). Defendant could have, but chose not to, raise this argument in his original motion. (*See* Doc. # 208). A defendant may not use a motion for reconsideration "to advance arguments that could have been raised in a prior briefing." *See Servants of Paraclete*, 204 F. 3d at 1012. Therefore, this does not provide grounds for reconsideration of the Court's prior order, and the Court will not address it.

---

[5] Further, the Court notes that Defendant's convictions were the result of plea deals in cases in which he was charged with much more serious crimes. If the Government had known at the time that those pleas would not serve as predicates for career-offender status, it seems unlikely that Defendant would have been offered such advantageous plea deals.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Reconsideration (Doc. # 223) is DENIED.

DATED: December 15, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge